**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| George John Sisemore,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV-18-03211-PHX-SMB<br><br>**ORDER** |

    At issue is the denial of Plaintiff George Sisemore's application for a period of disability and disability insurance benefits under Title II of the Social Security Act ("the Act"). Plaintiff filed a Complaint with this Court seeking judicial review of that denial. (Doc. 1.) After reviewing the Plaintiff's Brief (Doc. 18, Pl. Br.), Defendant's Response (Doc. 21, Def. Br.), Plaintiff's Reply (Doc. 22, Reply), and the administrative record (Doc. 14, R.), the Court reverses the decision and remands for further proceedings.

**I.     BACKGROUND**[1]

    Plaintiff was born in 1969, has a high school education, and has worked as a janitorial worker, building maintenance worker, and a school bus driver. (R. at 24.) On September 2, 2014, Plaintiff filed his Title II application for a period of disability and disability insurance benefits ("DIB") for the period from August 20, 2011, the alleged beginning date of disability, and December 31, 2016, the last date Plaintiff was insured. (R. at 15, 27.) Plaintiff's application was denied initially on December 31, 2014, and again

---

[1] In lieu of providing a detailed summary of the entire medical record here, the Court will reference and incorporate certain evidence as appropriate in its analysis.

upon reconsideration on August 17, 2015. (R. at 15.) On May 24, 2017, Plaintiff appeared at a hearing before an administrative law judge ("ALJ"). (*Id.*) The ALJ considered whether Plaintiff has been disabled since August 20, 2011, the alleged beginning date of disability. (*Id.*) The ALJ issued a written decision finding Plaintiff not disabled. (R. at 15-27.) On August 9, 2018, the Appeals Council denied review, making the decision final and ripe for this Court's review.[2] (R. at 1-3.)

The ALJ found Plaintiff had "severe"[3] impairments of knee arthritis, cervical degenerative disc disease and stenosis, type 2 diabetes mellitus, hypertension, and morbid obesity. (R. at 19.) The ALJ additionally noted that Plaintiff was treated for acute renal failure during a hospitalization, but that the impairment did meet the minimum 12-month minimum duration requirement[4] to be considered in the disability determination. (*Id.*)

The ALJ evaluated the medical evidence testimony and ultimately concluded that Plaintiff had not been disabled from August 20, 2011, the alleged onset date, through December 31, 2016, the date last insured.[5] (R. at 27.) The ALJ calculated Plaintiff's residual functional capacity[6] ("RFC") and found that he can perform "light work"[7] with certain limitations. (R. at 20.) Specifically, Plaintiff could stand and walk for four hours total in an eight-hour workday and sit for about six hours in an eight-hour workday. (*Id.*) He could frequently handle and finger with the left dominant upper extremity. (*Id.*) He could occasionally climb ramps and stairs, balance, stoop, crouch, and kneel; push or pull with the left dominant upper extremity; reach overhead with the bilateral upper extremities;

---

[2] This Court may review the Commissioner's disability determinations under 42 U.S.C. § 405(g): "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."
[3] An "impairment or combination of impairments" is "severe" if it "significantly limits [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).
[4] *See* 20 C.F.R. § 404.1509.
[5] Under the Social Security DIB program, the claimant must have full insurance coverage at the time of disability to qualify for benefits. 42 U.S.C. §§ 423(a), (c); 20 C.F.R. §§ 404.101(a), 404.131(a).
[6] "[R]esidual functional capacity is the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).
[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . it requires a good deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

and have exposure to dangerous machinery with moving mechanical parts and unprotected heights. (*Id.*) He could never climb ladders, ropes, or scaffolds, and could never crawl. (*Id.*) The ALJ considered the testimony of the vocational expert and found that Plaintiff was not capable of performing past relevant work. (R. at 24.) However, based on his age, education, work experience, and RFC, Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. (R. at 24-26.)

## II.     LEGAL STANDARDS

To determine whether a claimant is disabled under the Act, the ALJ follows a five-step analysis. 20 C.F.R. § 404.1520(a); *see also Popa v. Berryhill*, 872 F.3d 901, 905-06 (9th Cir. 2017). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). At step one, the ALJ determines whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled and the inquiry ends; if not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant can perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step and determines whether the Commissioner has shown that claimant can perform any other work in the national economy based on the claimant's age, education, work experience, and RFC. *Id.* § 404.1520(a)(4)(v). The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines set forth in Appendix 2 to Subpart P of 20 C.F.R. Part 404. If so, the claimant is not disabled; if not, the claimant is disabled. *Id.*

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or if it is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance—it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.*

To determine whether substantial evidence supports a decision, the Court must "consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### III. ANALYSIS

Plaintiff argues that the ALJ erred in evaluating his claim by: (1) misevaluating the medical opinions in the record and (2) improperly rejecting Plaintiff's symptom testimony. (Pl. Br. at 11, 19.) The Court now addresses each argument in turn.

#### A. The ALJ Did Not Err in Weighing the Medical Opinions.

The ALJ is required to evaluate and weigh every medical opinion in the record. 20 C.F.R. § 404.1527(c). The relationship between the medical opinion source and the claimant provides a starting point in deciding how to weigh that source's opinion about the claimant. Generally, the views of doctors who have treated the claimant get top priority. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Opinions of doctors who have examined but not treated the claimant are next in rank. *Id.* Those doctors who have neither treated nor examined the claimant generally get the least consideration. *Id.* "If a treating

or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (citation omitted). An ALJ may do this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Id.*

Plaintiff argues that the ALJ committed materially harmful error by rejecting the opinion of Plaintiff's treating physician, Patrick Sciara, M.D., while assigning "substantial weight" to the opinions of state agency reviewers, who neither examined Plaintiff nor reviewed the entire medical record. (Pl. Br. at 11.) Plaintiff argues that the ALJ inappropriately substituted her own independent analysis of the medical evidence in discounting the findings of Dr. Sciara. (Pl. Br. at 12.)

The Commissioner responds that the ALJ provided seven specific and legitimate reasons for giving little weight to Dr. Sciara's opinion, namely: (1) it was unsupported by the objective medical evidence; (2) it was not consistent with Plaintiff's reported improvement with treatment; (3) it contained inconsistences in reference to Plaintiff's experienced side effects to medication; (4) it was unsupported by any clinical or diagnostic studies, such as MRIs or x-rays; (5) Dr. Sciara is a general practitioner, rather than a specialist; (6) it appeared to merely recite Plaintiff's own subjective complaints; and (7) it was conclusory and not supported by any explanation as to the severity of the opined limitations. (Def. Br. at 5-8.) The Commissioner further argues that it was appropriate for the ALJ to assign substantial weight to the state agency reviewing physicians, Martha A. Goodrich, M.D., and Ernest Griffith, M.D., because the opinions constitute substantial evidence and are well-supported by the medical record. (Def. Br. at 8.)

The Court finds that the ALJ properly provided specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Sciara's opinion. The ALJ is responsible for resolving ambiguities in the medical record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008). It was thus appropriate for the ALJ to consider the inconsistencies between Dr. Sciara's findings of extreme limitations (R. at 425, 726) and

other treating providers' findings of normal motor strength and tone, normal gait, grossly intact sensation, and normal movement in all extremities (*see, e.g.*, R. at 380, 385, 390, 395, 398, 431, 467, 473, 478, 555, 544, 624, 778, 900, 935). Similarly, it was appropriate for the ALJ to consider the discrepancies between Dr. Sciara's opinion and other treating providers' findings of improvement with treatment (*see, e.g.*, 431, 467, 481, 602, 627, 642, 663, 692, 705, 939). It was also proper for the ALJ to consider irregularities in the medical record (R. at 667) and Dr. Sciara's treatment notes (R. at 939) regarding Plaintiff's reports of side effects from medication, as well as a lack of supporting examinations, diagnostic or clinical imaging, or explanation for Dr. Sciara's opined extreme limitations. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 948, 957 (9th Cir. 2002) (a treating physician opinion may be discounted or rejected if "brief, conclusory, and inadequately supported by clinical findings"). Finally, while it may be error for an ALJ to dismiss opinions of general practitioners based only on non-specialist status, *Sprague v. Bowen*, 812 F.2d 1226, 1231 (9th Cir. 1987), it was proper for the ALJ to consider Dr. Sciara's role as a general practitioner rather than a specialist as a factor in weighing Dr. Sciara's opinion of Plaintiff's limitations. *See* 20 C.F.R. 404.1527(c)(5).

The degree to which Dr. Sciara's opinion rested on Plaintiff's subjective complaints does not need to be discussed, because the ALJ provided multiple other reasons—all specific, legitimate, and well-supported—for discounting Dr. Sciara's opinion. The ALJ likewise appropriately weighed the opinions of agency reviewing physicians, Drs. Goodrich and Griffith (R. at 23, 71-73, 87-89), based on the ALJ's finding of support with the medical record as a whole. *See Thomas*, 278 F.3d at 957. There is no reversible error based on the ALJ's weighing of the medical evidence.

**B.     The ALJ Erred in Rejecting Plaintiff's Symptom Testimony.**

Plaintiff argues that the ALJ committed material error by rejecting Plaintiff's symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in the record as a whole. (Pl. Br. 19.) Plaintiff alleges that this error is not harmless because the VE testified that the limitations alleged by Plaintiff's symptom

testimony would make it impossible to perform any sustained work. (Pl. Br. at 19, 23.) Defendant argues that the ALJ provided legally sufficient reasons for finding that Plaintiff's pain testimony was inconsistent with objective medical evidence and other evidence in the record. (Def. Br. 10.)

Plaintiff testified that he is disabled due to a combination of physical impairments and severe daily pain that makes it difficult to function, including severe pain in his neck, left shoulder blade, left shoulder, left arm, and both knees. (R. at 21.) He explained that he experiences numbness in his left dominant arm and less strength compared with his right arm. He testified that he can sit for around twenty to thirty minutes, can stand and/or walk for about fifteen minutes, can walk for about 100 to 200 yards, and lies down four to five times per day for thirty to forty-five minutes at a time. He alleged to not sleep well and to have a pain level of about four to five (out of ten) when resting and nine to ten when active. He testified that he has difficult buttoning buttons and picking up items. He reported that he is limited in his ability to help around his home, but that he is able to grocery shop using an electric cart. He testified that he can drive around forty to fifty miles before needing to move to the passenger seat to recline.

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. 20 C.F.R. § 404.1529(c); *Garrison*, 759 F.3d at 1014. First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, the ALJ must then evaluate the statements in context of the (1) objective medical evidence and (2) other evidence in the record. *See* 20 C.F.R. §§ 404.1529(c)(2)-(3). The ALJ may then "reject the claimant's testimony about the severity of [the claimant's] symptoms only by offering specific, clear and convincing reasons for doing so," *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996), and not "merely because they are unsupported by objective medical evidence," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). This requirement is meant to prevent an ALJ

from "arbitrarily discredit[ing]" the claimant's subjective testimony. *See Thomas*, 278 F.3d at 958.

Here, the ALJ found the first step threshold met, stating that "the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. at 21.) In evaluating the second step, however, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

The ALJ focused on the objective findings in the medical record that the ALJ concluded do not support Plaintiff's pain testimony. (R. at 21-22.) Plaintiff is correct that this was in error. *See Garrison*, 759 F.3d at 1014-15 (plaintiff need not produce "objective medical evidence of the pain . . . itself, or the severity thereof"). Specifically, the ALJ pointed to Plaintiff's treating providers consistently noting "normal motor strength and tone, normal movement in all extremities, normal gait and station, and grossly intact sensation." (R. at 22.) The ALJ concluded that based on these observations, Plaintiff's impairments were not as limiting as alleged—despite positive findings including tenderness to palpation of the cervical spine, decreased range of motion of the cervical spine, moderate osteoarthritic degeneration of the right knee, pain with range of motion of the knee, crepitus and tenderness of the knee. (*Id.*)

The ALJ failed to discuss which aspects of Plaintiff's testimony were found not credible and instead outlined the medical record without relating it to Plaintiff's symptom testimony. This was error. *See Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014); *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). The ALJ also indicated that the providers' failure to order or recommend an electromyogram or nerve conductive study in response to Plaintiff's reports of numbness in his left upper extremity evidenced an RFC to perform light work with some limitations. (R. at 22.) This was error. *Trevizo v. Berryhill*, 871 F.3d 664, 682 n.10 (9th Cir. 2017) (citing *Robbins*, 466 F.3d at 883) ("[T]he absence of medical records regarding alleged symptoms is not itself enough to discredit a claimant's

testimony.").

The Court finds the ALJ did not provide "specific, clear and convincing" reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony. *Molina*, 674 F.3d at 1112. The errors in the ALJ's findings were not harmless. *See, e.g.*, *Garrison*, 759 F.3d at 1014. However, the Court disagrees with Plaintiff that remand for award of benefits based on the credit-as-true rule is the appropriate remedy. (Pl. Br. 24.) The credit-as-true rule only applies in cases where three elements are present. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099–1102 (9th Cir. 2014). First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence. *Id.* at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id.* at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id.* Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id.* (citations omitted). There are still conflicts and ambiguities that must be resolved, including the question of whether Plaintiff's pain and symptoms could be controlled by medication. (*See* R. at 22-23, 25, 22, 236, 263, 426, 727, 939; D. Br. at 11; Pl. Br. at 16-17.) Remand for further proceedings on this basis alone is appropriate. *See Treichler*, 775 F.3d at 1099; *Garrison*, 759 F.3d at 1021.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** reversing and remanding the October 13, 2017 decision of the Administrative Law Judge (R. at 15-27) for further proceedings.

Dated this 15th day of January, 2021.

Honorable Susan M. Brnovich
United States District Judge

- 9 -